IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

PEAK MEDICAL OKLAHOMA NO. 5, )
INC., d/b/a WOODLAND VIEW )
CARE AND REHABILITATION )
CENTER, )
                                                       )
                    **Plaintiff,** )
                                                       )
vs. )    Case No. 10-CV-597-TCK-PJC
                                                       )
**KATHLEEN SEBELIUS, in her official** )
**capacity as Secretary of Health and** )
**Human Services, United States** )
**Department of Health and Human** )
**Services, et al.,** )
                                                       )
                    **Defendants.** )

## OPINION AND ORDER

Before the Court is Plaintiff's Emergency Motion for an Injunction Pending Appeal (Doc. 59) ("Motion"), made pursuant to Federal Rule of Civil Procedure 62(c) ("Rule 62(c)"). For the reasons discussed herein, the Motion is granted.

**I.    Procedural Background**[1]

On September 21, 2010, Plaintiff Peak Medical Oklahoma No. 5, Inc., d/b/a Woodland View Care and Rehabilitation Center ("Woodland") filed a Verified Complaint ("Complaint") (Doc. 2) and Motion for Temporary Restraining Order ("Motion for TRO") (Doc. 3). Plaintiff sought, *inter alia*, to enjoin Defendants from terminating Medicare and Medicaid payments pending the outcome of Woodland's administrative appeal. On September 22, 2010, Judge Claire V. Eagan granted the Motion for TRO pending a preliminary injunction hearing scheduled before the undersigned on October 6, 2010 ("October 6 hearing"). Judge Eagan's Order stated as follows:

---

[1] The factual background outlined in the Court's Order of November 5, 2010 ("November 5 Order") is incorporated herein by reference. (*See* Doc. 56.)

> The Court finds that a temporary restraining order should be entered to maintain the status quo until the judge presiding over this case is available to hold a preliminary injunction hearing. The parties are advised that no factual findings or legal conclusions stated in this order shall be treated as binding on the presiding judge, and the parties should be prepared to argue and present evidence on all aspects of plaintiff's request for a preliminary injunction.

(9/22/10 Order 3 ("TRO").) Defendant Kathleen Sebelius, United States Secretary of Health and Human Services ("United States"), filed a motion to dismiss for lack of subject matter jurisdiction, which Defendant Henry F. Hartsell, Jr. ("Hartsell") adopted. (*See* Docs. 23 and 39.) Defendants Michael Fogarty, Chief Executive Officer of Oklahoma Health Care Authority ("OHCA"), Dora Huser ("Huser"), Mary Fleming ("Fleming"), and Tracy Kern ("Kern") also filed motions to dismiss, which adopted the United States' Motion to Dismiss and presented additional arguments regarding subject matter jurisdiction and venue. (*See* Docs. 30 and 51.) The Court heard argument on the various motions to dismiss at the October 6 hearing.

On November 5, 2010, following supplemental briefing by the parties, the Court granted the motions to dismiss and dismissed Woodland's Complaint for lack of subject matter jurisdiction. (*See* Docs. 56 (Order), 57 (Judgment of Dismissal).)[2] The Court's Order also dissolved the TRO

---

[2] The Court observes the inconsistent nature of considering the merits of this motion after finding an absence of subject matter jurisdiction. However, Defendants did not argue that, because of the Court's earlier ruling regarding subject matter jurisdiction, the relief afforded by Rule 62(c) is unavailable in this situation. In fact, the Court was able to find other examples of courts considering the merits of a motion for injunction pending appeal after dismissing the matter for lack of subject matter jurisdiction. *See Pentax Corp. v. Myhra*, 72 F.3d 708, 709-710 (9th Cir. 1995) (district court granted injunction pending appeal after dismissing case for lack of subject matter jurisdiction) (Ninth Circuit affirmed decision regarding subject matter jurisdiction and remanded back to district court to dissolve injunction pending appeal without any indication that injunction was outside authority of district court); *Dakota, Minn, and E. R.R. Co. v. Schieffer*, ---- F. Supp. 2d ----, 2010 WL 2772309, at *3-7 (D.S.D. 2010) (considering merits of motion for injunction pending appeal after dismissing case for lack of subject matter jurisdiction); *Alaska Cent. Express, Inc. v. United States*, 51 Fed. Cl. 227, 229 (Fed. Cl. 2007) (same) (stating that although it dismissed case for lack of subject matter jurisdiction, "[c]ourt does retain certain limited powers given to it under the rules to . . . aid the resolution of post-

previously entered by Judge Eagan. That same day, Woodland filed its Notice of Appeal to the United States Court of Appeals for the Tenth Circuit. On November 7, 2010, Woodland filed the Motion currently before the Court. In the Motion, Woodland seeks an injunction prohibiting Defendants from: (1) terminating Woodland's Medicare and Medicaid payments during the pendency of its appeal to the Tenth Circuit; and (2) involuntarily relocating Woodland's Medicare and Medicaid residents during the pendency of said appeal. Huser, Fleming, and Kern "express no objection or position as to [Woodland's] Motion, based upon [their] determination that they lack standing to oppose the injunction sought." (Resp. of Defs. Huser, Fleming, and Kern 1.) The remaining Defendants (collectively "Defendants") oppose Woodland's Motion and argue that the Court should deny the requested relief.[3]

## II. Discussion

A trial court has a long-established right to make orders appropriate to preserve the status quo while a case is pending on appeal. *See Newton v. Consol. Gas Co. of New York,* 258 U.S. 165,

---

judgment proceedings," and then outlining ability to grant injunction pending appeal under Rule 62(c)); *N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters*, No 04-CV-9949, 2005 WL 926969, at *1-5 (S.D.N.Y. 2005) (same); *Weingarten v. Potter*, 233 F. Supp. 833, 838 (S.D. Tex. 1964) (same). *But see McCammon v. United States*, 584 F. Supp. 2d 193, 196 (D.D.C. 2008) (questioning whether court had jurisdiction to provide injunctive relief to movant after previously determining it lacked subject matter jurisdiction) (finding that even if court had jurisdiction to issue injunction pending appeal, based on analysis of four factors, such injunction was not warranted); *Nat'l Athletic Trainers' Ass'n, Inc. v. U.S. Dep't of Health and Human Servs.,* No. Civ.A.3:05CV1098-G, 2005 WL 1923566, *2 (N.D. Tex. 2005) (stating it "lack[ed] the authority to provide injunctive relief once it [had] determined that it lack[ed] jurisdiction over the underlying case"). However, given what this Court finds to be an inherent inconsistency in ruling on an injunction pending appeal after finding the absence of subject matter jurisdiction, guidance from the Tenth Circuit is necessary regarding a district court's authority in such a situation.

[3] Hartsell has adopted the responses of the United States and OHCA. (*See* Resp. of Def. Hartsell to Pl.'s Emergency Mot. for Inj. Pending Appeal 2.)

177 (1922) ("Undoubtedly, after appeal the trial court may, if the purposes of [j]ustice require, preserve the status quo until decision by the appellate court."). This right is codified by Rule 62(c), which states that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." *See Barringer v. Griffes*, 810 F. Supp. 119, 120 (D.Vt. 1992) (noting that Rule 62 codifies court's ability to preserve the status quo pending appeal); 11C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2904 (3d. ed.) (hereinafter *Federal Practice and Procedure*) (stating that Rule 62(c) "codifies the inherent power of courts to make whatever order is deemed necessary to preserve the status quo"). In determining whether to issue an injunction pending appeal pursuant to Rule 62(c), a court should consider the following factors: (1) whether the movant is likely to succeed on the merits of its appeal; (2) whether the movant will be irreparably injured absent an injunction; (3) whether issuance of the injunction will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001).[4]

---

[4] Certain types of injunctions are disfavored and require strong showings of the likelihood of success on the merits and the balance of harms. *See Westar Energy Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009) (stating that such injunctions include mandatory injunctions, those altering the status quo, and those granting the moving party all the relief it could recover at the conclusion of a full trial on the merits); *see also FTC v. Mainstream Mktg. Servs., Inc.,* 345 F.3d 850, 852 (10th Cir. 2003) (discussing same in context of request to stay preliminary injunction pending appeal). Defendants' responses to Woodland's Motion fail to contain any argument that the injunction requested by Woodland constitutes such a "disfavored" injunction.

4

### A.     Likelihood of Success on Merits of Appeal

In assessing the likelihood of success on appeal, this factor is "somewhat relaxed" if a movant is able to establish that the "three harm factors" tip in its favor. *See FTC*, 345 F.3d at 852. Under such circumstances, "probability of success is demonstrated when the [movant] has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Id.* (internal quotation and citation omitted). If a movant is not entitled to the relaxed standard with regard to this factor, a court must determine whether the movant has demonstrated a "*substantial likelihood* of success on the merits of its appeal." *Id.* at 853 (emphasis added). Because, as discussed below, the Court finds that the three harm factors tip in Woodland's favor, (*see supra* Sections II.B-D), it will apply the relaxed version of this factor.

For reasons outlined in the November 5 Order, the Court has concluded that it lacks subject matter jurisdiction over this matter. However, certain issues being raised on appeal are largely matters of first impression; namely, there is an absence of case law directly considering whether a claim for interim relief made under Section 705 of the Administrative Procedures Act somehow trumps or moots the exhaustion requirements of the Medicare Act. (*See* Nov. 5 Order 17.) Further, there is conflicting case law regarding a court's ability to grant preliminary injunctive relief pending the outcome of an administrative appeal brought under the Medicare Act. *Compare, e.g., Cathedral Rock of N. College Hill, Inc. v. Shalala*, 223 F.3d 354 (6th Cir. 2000), *Forum Healthcare Group, Inc. v. Ctrs. for Medicare & Medicaid Servs.*, 495 F. Supp. 2d 1321 (N.D. Ga. 2007), *and Trade Around the World of Pa. v. Shalala*, 145 F. Supp. 2d 653 (W.D. Pa. 2001), *with Pathfinder Healthcare, Inc. v. Thompson*, 177 F. Supp. 2d 895 (E.D. Ark. 2001), *and Frontier Health Inc. v. Shalala*, 113 F. Supp. 2d 1192 (E.D. Tenn. 2000). Although this Court found *Cathedral Rock* and

5

similar cases more persuasive and applicable to the facts in this case, (*see* Nov. 5 Order 12-17), the Tenth Circuit has yet to weigh in on this issue, and this question is certainly deserving of more deliberate investigation. Accordingly, the Court finds that this factor weighs in favor of granting injunctive relief pending Woodland's appeal to the Tenth Circuit. *See Walker v. Lockhart*, 678 F.2d 68, 71 (8th Cir. 1982) (granting injunction pending appeal when merits of appeal "involve[d] substantial questions of law which remain to be resolved"); *Thiry v. Carlson*, 891 F. Supp. 563, 566 (D. Kan. 1995) (noting, when analyzing likelihood of success on appeal, that the case "involve[d] substantial legal questions in an area of the law that continues to evolve"); *Sweeney v. Bond*, 519 F. Supp. 124, 132, 133 (E.D. Mo. 1981) (noting "trial courts have issued or stayed injunctions pending appeal where such action was necessary to preserve the status quo or where the legal questions were substantial and matters of first impression") (finding likelihood of success factor met when case "present[ed] serious legal questions of first impression").[5]

## B.    Irreparable Injury to MCN

A plaintiff satisfies the irreparable harm requirement by demonstrating "a significant risk that [it] will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009). Purely speculative harm will not suffice, but "[a] plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative" and will be held to have satisfied his burden. *Id.* (internal citations

---

[5] In arguing that Woodland is unable to demonstrate a likelihood of success on appeal, Defendants assumed that the Court would *not* apply the relaxed version of this factor, instead basing their argument around Woodland's inability to make a "strong showing" of success on appeal. (*See* United States' Resp. Br. to Pl.'s Mot. for Inj. Pending Appeal 2; OHCA's Resp. to Pl.'s Emergency Mot. for Inj. Pending Appeal 10.) Because, as discussed above, the Court need only determine whether Woodland has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation, these arguments are largely inapplicable.

omitted).  Woodland's argument with regard to this factor focuses on the harm that would befall its residents and employees if the residents were transferred from its facility and Woodland was forced to close its doors.  (*See* Br. in Supp. of Mot. for Inj. Pending Appeal 3-4 (citing cases finding irreparable harm when residents would likely be transferred out of facility).)  In contesting Woodland's assertion of irreparable harm, Defendants make two central arguments: (1) Woodland cannot argue irreparable harm on behalf of its residents and employees; and (2) the only harm incurred by Woodland is monetary, which, by definition, is not "irreparable."

The Court is not willing to completely disregard the interests of Woodland's residents and employees in the manner suggested by Defendants.  Although the residents are not formally before the Court, their "interests are still relevant in evaluating irreparable harm for the equitable determination whether or not to grant [an injunction pending appeal]."  *Mediplex of Mass., Inc. v. Shalala*, 39 F. Supp. 2d 88, 98-99 (D. Mass. 1999).  Woodland certainly has an interest in potential harm to its residents and employees, and harm to Woodland's residents and employees arguably constitutes harm befalling Woodland as well.  Failure to consider this interest for the purposes of the irreparable harm analysis is disingenuous and ignores the reality of this situation.

Woodland has focused a great deal of argument, both in its briefing before the Court and at the October 6 hearing, on the harm that would result to Woodland, its residents, its employees, and the community at large if its Medicare and Medicaid payments were terminated and if the residents were required to transfer into new facilities.  Specifically, the record reflects the fact that a withholding of payments to Woodland would likely cause the closure of Woodland and the termination of Woodland's employees, as a significant portion of Woodland's revenue comes from the Medicare and Medicaid programs.  It has further been established that Woodland serves a unique and fragile resident population that would suffer trauma if forced to transfer from Woodland.

Woodland has submitted testimony, both at the October 6 hearing and through affidavits, indicating that transfer would be physically and psychologically dangerous for many of Woodland's residents. Although the Court notes the United States' general contention that "transfer trauma" does not necessarily result in all such cases, the Court finds there is a "significant risk" of such trauma. *See RoDa Drilling Co.*, 552 F.3d at 1210.

Finally, although federal and state officials have currently agreed to allow the residents to remain at Woodland, this fact does not fully mitigate the risks of transfer. Officials are not bound to this concession and, at their discretion, could require the involuntary relocation of Woodland's residents. The Court is admittedly unable to predict with compete accuracy whether the residents will be forced to transfer to other facilities, but the Court finds that the risk of such occurring is "significant," as required for a demonstration of this factor. *See id*.

### C. Substantial Harm to Defendants

After determining the harm that would be suffered by the moving party if the preliminary injunction is not granted, the court must then weigh that harm against the harm to the defendant if the injunction is granted. *Universal Engraving, Inc. v. Duarte*, 519 F. Supp. 2d 1140, 1149 (D. Kan. 2007). The United States argues it would be harmed because its interests are "compromised when a facility, like [Woodland] has repeat violations and remains chronically out of compliance, circumvents the administrative review process, and seeks relief in court." (United States' Resp. Br. to Pl.'s Mot. for Inj. Pending Appeal 7.) OHCA argues it would be harmed by the issuance of an injunction because it would be forced to pay Medicaid benefits to Woodland when it no longer has a contract with Woodland (due to the termination of Woodland's provider agreements). OHCA also asserts that there is a chance that, should an injunction issue, the residents of Woodland could be in

"immediate jeopardy," and it would be unable to take the steps necessary to remove the patients from such jeopardy.

Although the Court finds Defendants' concerns well-founded, certain of these concerns – namely, OHCA's argument regarding the risk of "immediate jeopardy" – can be remedied by placing conditions on the injunctive relief. (*See infra* Section II.E.) Further, with regard to compliance with the Medicare administrative scheme, the Court certainly finds some harm in failing to strictly comply with applicable statutes and regulations. However, such harm, when weighed against the significant risk of harm to Woodland, (*see supra* Section II.B), is simply insufficient to prohibit the injunction pending appeal. Therefore, the Court finds this factor to favor Woodland.

### D. Public Interest

Finally, in considering the public interest factor, the Court is permitted to inquire whether there are policy considerations that bear on whether an injunction should issue. *Federal Practice and Procedure* § 2948.4. On one hand, the Court agrees with Defendants that the public has an interest in ensuring compliance with Medicare and Medicaid requirements and allowing sanctions against non-compliant providers. However, the Court finds that there are greater public interests served in this case by the continued payment of Medicare and Medicaid funds to Woodland. Where, like here, there is no immediate jeopardy to residents, the public has an interest in the provision of uninterrupted Medicare and Medicaid payments to ensure that the residents are able to remain in their "home" facility and are not put in danger of the traumas and difficulties commonly associated with transferring facilities. Further, because the record reflects that Woodland serves a unique resident population, the public interest is served in permitting Woodland to continue providing care to these residents rather than having to close its doors. Indeed, displacement of Woodland's residents to facilities that are not suited to meet their needs is adverse to the public interest.

### E. Scope of Injunction Pending Appeal

The Court has applied the four factors cited above and concludes that the status quo should be maintained by entering an injunction pending appeal of the Court's November 5 Order. Accordingly, pending the appeal to the Tenth Circuit, Defendants are enjoined from (1) terminating Woodland's Medicare and Medicaid payments for those residents whose plans of care began before the termination date of Woodland's Medicare and Medicaid provider agreements; and (2) involuntarily relocating Woodland's Medicare and Medicaid residents. As discussed at the October 6 hearing, Defendants are able to inspect Woodland at any time, (*see* Hr'g Tr. 102, October 6, 2010), and this injunction is expressly conditioned on (1) Woodland's continued efforts at achieving and sustaining substantial compliance with the applicable Medicare and Medicaid certification requirements, and (2) the residents not being in "immediate jeopardy." Further, Defendants are directed to promptly notify the Court in the event that, during the pendency of the injunction, Defendants believe (1) Woodland is not making sufficient efforts to achieve and/or sustain substantial compliance with the applicable requirements, or (2) Woodland's residents are in "immediate jeopardy." The parties are additionally ordered to inform the Court of ALJ Kessel's decision, once rendered.

## III. Conclusion

For the reasons outlined here, Woodland's Emergency Motion for an Injunction Pending Appeal (Doc. 59) is GRANTED.

**SO ORDERED this 18th day of November, 2010.**

**TERENCE KERN**
**United States District Judge**